IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 20–cv–00487–MDB

MADISON SMITH,

    Plaintiff,

v.

DEPARTMENT OF DEFENSE,
UNITED STATES DEPARTMENT OF THE AIR FORCE, and
UNITED STATES AIR FORCE ACADEMY,

    Defendants.

# ORDER

    Plaintiff Madison Smith brings this action under the Administrative Procedure Act ["APA"], 5 U.S.C. § 701, *et seq*., seeking judicial review of the decision made by the Air Force Board for Correction of Military Records ["AFBCMR"], to uphold the United States Air Force Academy Superintendent, Lieutenant General Jay Silveria, decision to disenroll Plaintiff from the United States Air Force Academy ["USAFA"]. (Doc. No. 53 at 6.) Plaintiff has filed an Opening Brief to which Defendants have responded. (Doc. Nos. 53; 56.) No reply has been filed and the time to do so has lapsed. Defendants submitted the Administrative Record. (["AR"], Doc. Nos. 31; 50.) After carefully analyzing the briefs and the AR, the Court **AFFIRMS** the AFBCMR's final decision.

## STATEMENT OF THE CASE

**I.    Factual Background**

In June 2017, Plaintiff enrolled as a first-year cadet at the USAFA. (AR 7.) Shortly after beginning her education, Plaintiff was accused of cheating on four "weekly knowledge tests" between August 27, 2017, and September 24, 2017. (AR 3.) Plaintiff eventually admitted to the cheating allegations. (AR 42.) A Cadet Sanctions Recommendation Panel ["CSRP"] was convened on January 10, 2018, to consider the accusations. (AR 86.) The Panel determined Plaintiff "committed the acts of cheating as well as having had the intent to cheat" and accordingly placed Plaintiff on six-month "honor probation." (*Id.*)

Among other things, honor probation required Plaintiff to "remain in the USAFA Cadet Area" on base. (AR 3.) Plaintiff violated her honor probation at least twice. (AR 221–22.) First, on February 17, 2018, Plaintiff went to a gas station within the USAFA Community Center, an area located outside of the Cadet Area, without authorization. (AR 3, 19, 43, 221–22.) Later, on June 2, 2018, Plaintiff left base to go to a Chick-Fil-A restaurant. (AR 3, 20, 43, 222.) Plaintiff eventually admitted to both violations.[1] (AR 43.) After each probation violation Plaintiff was served "an Honor Probation Failure Warning Letter," which she signed, acknowledging understanding. (AR 24.)

In June 2018, a Midpoint Evaluation Panel ["MEP"] convened "to review Cadet Smith's progress during her time on probation." (AR 30.) Based on its review of her actions while on

---

[1] Defendants refer to a third violation of honor probation. (Doc. No. 56 at 2.) Whether or not there was a third violation, depends in part, on whether Plaintiff's honor probation began on February 1, 2018 (as set forth in the Record of Proceedings and other documents). (AR 221; *see, e.g.*, AR 26, 28, 86.) However, certain documents suggest Plaintiff's probation began immediately on January 10, 2018, after she signed a "Loss of Status Record" at her CSRP. (*See, e.g.*, AR 24, 42). Based on these conflicting dates, it is unclear whether Plaintiff's travel to Estes Park on January 14, 2018, violated her honor probation. (*See* AR 19.) The AFBCMR's Record of Proceedings does not mention this trip (AR 220–27.)

2

probation, the MEP's "overall recommendation" was that Plaintiff be disenrolled from USAFA. (AR 30–31.) During the summer of 2018, additional Air Force officers recommended Plaintiff's disenrollment from the USAFA, including her Air Officer Commanding ["AOC"],[2] Major John DeLobel, and the Group AOC Lieutenant Colonel Anthony Salvatore. (AR 86, 90.) Plaintiff was allowed to respond to the MEP recommendation, and she did so by filing a personal memorandum, 29 character references, and additional materials. (AR 42–81.) However, on August 20, 2018, the Commandant of Cadets, Brigadier General Kristin Goodwin, informed Plaintiff she was recommending Plaintiff's disenrollment. (AR 19–22, 82.)

Thereafter, Plaintiff indicated her intent to appeal the recommendation to the Superintendent, Lieutenant General Silveria. (AR 84.) On November 7, 2018, Lieutenant General Silveria decided not to disenroll Plaintiff, instead placing her on "suspended disenrollment status." (AR 92.) In this status, Plaintiff was again placed on honor probation for six months beginning November 7, 2018. (AR 92, 209.) Plaintiff was notified that "[f]ailure to meet the terms of [her] honor probation and abide by all of the USAFA cadet rules and regulations [would] result in [her] disenrollment from the United States Air Force Academy." (AR 92.) Plaintiff signed Lieutenant General Silveria's decision, indicating that she understood. (*Id.*)

Shortly after Lieutenant General Silveria's decision, Plaintiff was notified of the terms of her probation. (AR 209–11.) Among several other things, Plaintiff was required to meet with her

---

[2] AOCs "supervise cadets, and are located within each group and squadron. These Air Force officers oversee all cadet activities, provide instruction and serve as role models as the cadets experience firsthand the processes of command and organization to accomplish the mission." *Squadrons*, UNITED STATES AIR FORCE ACADEMY, https://www.usafa.edu/military/squadrons/ (last visited Feb. 23, 2023).

honor mentor and her AOC on a regular basis. (*Id.*) Plaintiff signed the documents describing her new probation terms, acknowledging understanding. (AR 211.)

During her second six-month probation, Plaintiff had a new AOC, Major Dominique Haig.[3] (*See* Doc. No. 53 at 8; Doc. No. 56 at 5.) During an April 11, 2019, probation-required meeting with Major Haig, Plaintiff discussed Colonel Scott Campbell's decision to "den[y her] request for reductions in her Honor Probation sanctions." (AR 100.) On May 7, 2019, Major Haig reported that during the meeting, ostensibly due to her frustration with Colonel Campbell's decision, Plaintiff:

> made several disrespectful and unprofessional statements regarding the United States Air Force Academy, the Superintendent and [her] Air Officer Commanding. These statements involved stating that the "only reason [she was] not disenrolled by the Superintendent was because everyone is afraid of [her] father."

(AR 103.) Based on her actions during the meeting, Plaintiff was issued a Letter of Reprimand ["LOR"] by Major Haig, which stated, among other things, "the conduct you displayed in the mentoring session was disrespectful towards your AOC."[4] (*Id.*)

Plaintiff was allowed to respond to the LOR. (AR 106–07.) In her response, Plaintiff wrote, among other things, "I take full responsibility for anything I said. However, I do not recall making a statement such as the one you noted in the LOR. I further do not recall displaying

---

[3]In Plaintiff's brief, she indicates that during the fall of 2018, she was transferred from squadron CS-08 to CS-07. (Doc. No. 53 at 6.) This appears to be the reason for her change in AOC, but it is not explicitly stated in the briefing.

[4] As emphasized by Plaintiff, the LOR came 18 days after the meeting in question. (AR 103.)

disrespectful conduct to you."[5] (AR 106.) However, following receipt of Plaintiff's response, Major Haig reported that the LOR "stands as written."[6] (AR 109.)

      Subsequent to the LOR, Major Haig recommended Plaintiff's disenrollment. (*See* AR 100–02.) Disenrollment was also recommended by Colonel Joyce Storm and Lieutenant Jennifer Colonel Burnett, each of whom had regularly met with Plaintiff during her probation.[7] (*See* AR 110, 111.) On May 16, 2019, Colonel Campbell, the Vice Commandant of Cadets, informed Plaintiff she had "failed probation." (AR 95.) Plaintiff signed a document acknowledging that

---

[5] In her AOC Comments to the LOR Response, Major Haig disputed this assertion, saying that "most of our hour long mentoring session revolved around [these comments] and a few other statements of a similar nature." (AR 109.)

[6] The fact section of Plaintiff's brief also focuses on a second meeting with Major Haig in January 2019. During this meeting, Plaintiff indicated a potential desire to be transferred to a new squadron. Plaintiff contends that Major Haig recommended against a transfer, partly because "Plaintiff seemed to perform better under female leadership." (Doc. No. 53 at 8.) Plaintiff refers to this alleged statement as the "gender comment" (*Id.*) As noted by Defendants, "[s]uch a comment would be problematic because officers must serve under male and female officers." (Doc. No. 56 at 5.) Though Plaintiff makes no citations to the AR, the Court located certain documents indicating that Plaintiff had repeated this alleged comment to other USAFA leaders she was required to meet with during her probation. (*See* AR 115–16.) Major Haig questioned Plaintiff about the supposed comment during a May 9, 2019, meeting and indicated she did not recall making the statement. (*Id.*) The next day, on May 10, 2019, Major Haig and Plaintiff had a "formal clarification" about the alleged statement, during which Major Haig indicated she "believed that C3C Smith ha[d] violated the Air Force Academy Honor Code by way of lying by stating that Major Haig made a statement which Major Haig denies making." (AR 119.) Regardless, while the Judge Advocate attorney's eventual recommendation to disenroll Plaintiff references "honor processing for a new allegation … that [Plaintiff] made a false official statement to some of her probation senior mentors," it confirms that this was "not a basis" for his recommendation. (AR 5.) Likewise, this allegation is not mentioned by the AFBCMR in its Record of Proceedings. (AR 220–27.)

[7] An August 7, 2019, summary and recommendation by a Staff Judge Advocate's Office attorney noted that "the Group Four Honor Chairman, the AMT … the Group AOC, the Deputy Chief of Special Actions … the Vice Commandant of Cadets, and the Commandant of Cadets" also recommended disenrolling Plaintiff. (AR 4.)

5

she understood. (AR 96.) A final decision on disenrollment was left to the Superintendent. On June 10, 2019, Plaintiff was informed that the Superintendent was "considering whether or not to disenroll her." (AR 93.) Plaintiff was provided the documents the Superintendent would be considering and was informed that she had the right to provide a written response. (AR 94.) Plaintiff signed the information document, acknowledging she understood. (AR 93.) Plaintiff responded with an 11-page memorandum and several attachments, including a memo from her attorney. (AR 126–98.)

On August 7, 2019, Superintendent Silveria notified Plaintiff she was being disenrolled from the USAFA. (AR 1) Plaintiff was given an honorable discharge.[8] (AR 7.) Plaintiff appealed the Superintendent's decision on August 18, 2020, seeking to be "immediately reinstated as a cadet in good standing in the United States Air Force Academy. (AR 228–29.)

On June 14, 2021, USAFA Assistant Staff Judge Advocate, Major Joshua Traeger, submitted an advisory opinion to the AFBCMR, describing the case and recommending that the AFBCMR uphold the Superintendent's decision. (AR 258–261; *see* AR 260 ("In accordance with USAFAI 36-3504, the Superintendent may disenroll cadets for conduct, to include minor disciplinary infractions. The Superintendent may also disenroll cadets who fail in conduct and/or aptitude probation. Here, the applicant clearly demonstrated deficiencies in both regards.").)

Plaintiff was given 30 days to respond to the advisory opinion. (AR 262.) In response, Plaintiff's counsel submitted a brief and several supporting attachments. (AR 268–97.) As noted by the AFBCMR, Plaintiff contended that her "disenrollment was the culmination of multiple

---

[8] Additionally, according to the AFBCMR, Plaintiff was not required to reimburse the Air Force for the cost of her education. (AR 222.)

due process and regulatory violations, and was contrary to United States Air Force policy." (AR 220.) Plaintiff specifically claimed that "the USAFA neglected to follow its own rules, whereby it failed to inform the applicant of her disenrollment prior to initiating proceedings against her. (AR 220 ("Citing Air Force Cadet Wing Instruction 51-201, paragraph 4.20.1., '…the decision to disenroll a cadet shall not come as a surprise to the cadet…', counsel contended the applicant was never informed she was at risk of failing probation, nor was she ever informed that she had, in fact, failed probation.") Plaintiff also challenged the claim that she was disrespectful during the April 11, 2019, meeting with Major Haig, saying the allegation was without merit while emphasizing that the LOR was not issued until 18 days following the meeting (AR 268–69, 272.) Plaintiff also argued that even assuming she made the disrespectful statements in question, the USAFA failed to consider several mitigating factors, including mental health struggles connected to the unexpected death of Plaintiff's mother in December 2018, and the extended period she was confined to a small part of the Academy during probation. (AR 272–73.)

However, on August 23, 2021, the AFBCMR unanimously voted against correcting the record: "the Board concludes the applicant is not the victim of an error or injustice. The Board concurs with the rationale and recommendation of USAFA/JA and finds a preponderance of the evidence does not substantiate the applicant's contentions. Therefore, the Board recommends against correcting the applicant's records." [9] (AR 226.) Accordingly, the Superintendent's decision to disenroll Plaintiff was upheld.

## II.     Procedural Background

---

[9] *See Roberts v. United States*, 741 F.3d 152, 159 (D.C. Cir. 2014) (stating that a military record correction board may meet its obligation to provide "reasoned explanation" by referring "to the reasoning of an advisory opinion").

On February 24, 2020, Plaintiff initiated this action by filing a Complaint contending that her disenrollment from the USAFA violated her procedural and substantive due process rights and requesting a review of the decision under the APA. (Doc. No. 1 at 11– 15.) On September 14, 2020, Defendants moved to dismiss the Plaintiff's due process claims. (Doc. No. 30.) The Honorable Kathleen Tafoya granted that motion on September 21, 2021. (Doc. No. 38.) While the motion to dismiss was pending, the AFBCMR denied Plaintiff's administrative appeal of her disenrollment. (AR 226.) After Plaintiff's due process claims were dismissed, she filed an Amended Complaint, challenging the AFBCMR's decision to uphold her disenrollment under the APA. (Doc. No. 48.)

Plaintiff seeks reinstatement in the USAFA. (Doc. No. 53 at 16.) Defendants argue in response, "[i]f the Court were to find that Defendants erred in the decisionmaking process, the remedy is remand, not reinstatement." (Doc. No. 56 at 20.)

## STANDARD OF REVIEW

"It is well-settled that a final decision of military records correction boards, like the AFBCMR's decision here, is judicially reviewable as a 'final agency action' for the purposes of the APA." *Roetenberg v. Sec'y of Air Force*, 73 F. Supp. 2d 631, 636 (E.D. Va. 1999); *see* 32 C.F.R. § 865.4(p) (2009) ("The [Air Force] Board [for Correction of Military Records] acts for the Secretary of the Air Force and its decision is final when it ... [d]enies any application."); 5 U.S.C. § 704 (2007) (providing for judicial review under the Administrative Procedure Act of "final agency action" only). "As in the case of other federal agencies, a court may overturn a decision of the AFBCMR only if it is either 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or not supported by substantial evidence in the record."

8

*Charlton v. Donley*, 846 F. Supp. 2d 76, 84 (D.D.C. 2012) (quoting and citing 5 U.S.C. § 706(2)(A), (E)). "[R]eview of that decision is not *de novo,* but rather is limited to the administrative record." *Roetenberg*, 73 F. Supp. 2d at 636.

"While decisions of the AFBCMR are 'reviewable under the APA,' these decisions are reviewable by an unusually deferential application of the 'arbitrary or capricious' standard." *Bates v. Donley*, 935 F. Supp. 2d 14, 25 (D.D.C. 2013) (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). "Because the statute authorizing the Secretary of the Air Force to correct records gives him—and his delegated agent, the AFBCMR—a great deal of discretion, the arbitrary and capricious standard is even more difficult to meet than it is in other cases brought under the APA'" *Charlton*, 846 F. Supp. 2d at 84; *see Kreis*, 866 F.2d at 1514 (explaining that the relevant statute, 15 U.S.C. § 1552(a), says the Secretary of the Air Force, "acting through the AFBCMR, 'may correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice,' not simply when such action *is* necessary to correct an error or to remove an injustice" (emphasis in original) (quoting 10 U.S.C. § 1552(a)) (internal citation omitted)).

Still, however, "judicial review under this deferential standard must be meaningful," and the Court is "not empowered to rubber-stamp" an AFBCMR decision. *Charlton*, 846 F. Supp. 2d at 84 (quotation marks omitted); *Washington v. Donley*, 802 F. Supp. 2d 539, 546 (D. Del. 2011) (quoting *NLRB v. Adam & Eve Cosmetics*, 567 F.2d 723, 727 (7th Cir. 1977)). To be affirmed, the AFBCMR decision must be minimally supported by evidence equating to "more than a scintilla, but less than a preponderance." *BNSF R. Co. v. U.S. Dep't of Lab.*, 816 F.3d 628, 638 (10th Cir. 2016) "[T]he [AFBCMR's] decision need not be a model of analytic precision, but it

must minimally contain a rational connection between the facts found and the choice made." *Bates*, 935 F. Supp. 2d at 26 (quotation marks and alterations omitted) (quoting *Wilhelmus v. Geren*, 796 F.Supp.2d 157, 163 (D.D.C. 2011)).

Finally, not every challenge to a service branch's decision is justiciable. "The role of the federal judiciary with respect to the internal affairs of the military is narrow and restricted." *Schulke v. United States*, 544 F.2d 453, 455 (10th Cir. 1976). "Whether [P]laintiff's claim is justiciable turns on the nature of [her] challenge to [her] disenrollment." *DeRito v. United States*, 445 F. Supp. 3d 1258, 1266 (D. Colo. 2020), *aff'd*, 851 F. App'x 860 (10th Cir. 2021). "The *merits* of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) (emphasis added). However, "although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Id.* (emphasis added); *see DeRito*, 445 F. Supp. at 1265 n. 8 ("[A plaintiff] may appeal the AFBCMR's decision if [her] claims are justiciable – i.e., if they challenge the procedures underlying the decision rather than the decision's merits."); *see also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province … courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.").

# ANALYSIS.[10]

Plaintiff's brief can be boiled down to one issue: whether the evidence in support of the allegation that Plaintiff made disrespectful statements during her April 11, 2019, meeting with Major Haig was too sparse to be found credible by the AFBCMR.[11] (Doc. No. 53 at 14.) Plaintiff argues "there is absolutely no credible evidence that [she] made the alleged comments[.]" (*Id.* at 14.) Plaintiff contends that "[t]he only evidence is [the LOR] drafted some 18 days after the alleged incident occurred." (*Id.*) Plaintiff further argues,

> [t]he USAFA claimed that Plaintiff made several disrespectful comments, yet only one of these alleged comments were mentioned in the [LOR]. Certainly, if several disrespectful and unprofessional comments were made, these additional comments would have been included in the [LOR]. The failure to include these alleged comments is strong evidence that these comments did not occur.

(*Id.*) Notwithstanding Plaintiff's contentions, the AFBCMR chose to credit the representations of Major Haig in its decision. (AR 222 ("On 11 Apr 19, during a probation mentoring session with

---

[10] Plaintiff does not make a single citation to the AR in her brief. Defendants contend that by failing to cite to the AR, Plaintiff "has not met her burden" and "the Court may reject Plaintiff's claims." (Doc. No. 56 at 15 (citing *Smith v. Cummings*, 445 F.3d 1254, 1261 (10th Cir. 2006).) However, while the Court agrees Plaintiff's failure to cite to the AR weakens her case, the Court will attempt to substantively review Plaintiff's argument rather than affirming the AFBCMR's decision on this basis alone.

[11] Plaintiff does make a second argument—related to a purported statement by Major Haig to Plaintiff that Plaintiff "seemed to perform better under female leadership." (Doc. No. 53 at 8); *see supra* n. 6. After Major Haig denied making such a statement, an honor investigation was opened to determine whether Plaintiff lied by telling other officers that Major Haig indeed said it. However, as noted above, the investigation into whether or not Plaintiff lied was explicitly *not* a basis relied upon by the Superintendent in disenrolling her and was not addressed by the AFBCMR in upholding the decision. (*See supra* n. 6; AR 5 (stating in the Judge Advocates' disenrollment recommendation, that Plaintiff was undergoing "honor processing for a new allegation … that [she] made a false official statement to some of her probation senior mentors," but confirming this was "not a basis" for the recommendation).) Accordingly, this argument is immaterial to Plaintiff's challenge to the AFBCMR decision.

her AOC, the applicant made several disrespectful and unprofessional comments about the USAFA, the Superintendent, and the AOC. As a result, the applicant received a Letter of Reprimand for disrespectful and unprofessional behavior.").)

At the outset, the Court notes that it is not allowed to "reweigh" the evidence considered by the AFBCMR nor to address the merits of the decision. *See BNSF R. Co.*, 816 F.3d at 638 ("We neither reweigh the evidence nor substitute our judgment for that of the agency."). Further, at least one court of appeals has commented, "[t]he credibility determinations of an administrative judge are virtually unreviewable on appeal." *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) (citing *Pope v. United States Postal Serv.,* 114 F.3d 1144, 1149 (Fed.Cir. 1997)). Still, however, insofar as the Court is tasked with ensuring "a rational connection between the facts found and the choice made," and insofar as the Court must find that the AFBCMR's decision is supported by "substantial evidence," it will briefly discuss the AFBCMR's decision to credit Major Haig's allegations. *Bates*, 935 F. Supp. 2d at 26.

Neither the AFBCMR, nor the Judge Advocate's advisory opinion, dissects the decision to credit the LOR. (AR 220–27, 263–66.) However, sufficient analysis or consideration of a particular issue is not the standard. The standard is whether the AFBCMR's decision was arbitrary, not in accordance with law, or not supported by substantial evidence in the record. Here, the AR provides sufficient support for the assertions in the LOR. First, in response to the LOR, Plaintiff wrote that she took "full responsibility for anything [she] said." (AR 106.) This statement suggests Plaintiff made at least some problematic statements during her conversation with Major Haig. Indeed, and as pointed out by Defendants, there was specific evidence of at least one statement Plaintiff made and "Plaintiff offers no explanation why *any* disrespectful

statement … would be acceptable." (Doc. No. 56 at 20 (emphasis in original).) Thus, Plaintiff's claim that the LOR lacks credibility because it referred to "several" statements but only specifically paraphrased one statement is not persuasive.[12] Certainly, a recitation of every disrespectful statement could be more impactful, but the absence of that detail does not demand Plaintiff's conclusion that other "comments did not occur." (Doc. No. 53 at 14.)

Second, "[w]hen asked for any motive or reason why Major Haig would make up such allegations, [Plaintiff] gave no plausible explanation." (AR 97.) Plaintiff's failure to articulate any motive significantly undercuts her argument that the LOR lacks credibility. Finally, while an 18-day gap between the alleged disrespectful comments and the LOR could potentially raise credibility issues, it does not render the AFBCMR's decision unsupported by the evidence. Indeed, in its review of the AR, the Court found explanations for the gap in time between the meeting and the LOR. Most notably, a May 22, 2019, memorandum (documenting a meeting with Plaintiff) signed by Lieutenant Colonel Anthony Salvatore and Master Sargent Jared Flores indicates "[i]t is likely that Major Haig did not have sufficient time to draft the LOR, seek legal review and administer [the LOR]" more quickly because "two events dominated Major Haig's time during that timeframe; cadet assessment and personal leave." (AR 97.) Thus, to the extent the 18-day gap looks suspicious, those suspicions are put to rest by the record. Accordingly, the Court finds that the AR contains evidence that a "reasonable mind might accept as adequate to support [the] conclusion" that the allegations in the LOR were credible. *Fowler v. Bowen*, 876

---

[12] That statement being the "only reason [Plaintiff was] not disenrolled by the Superintendent was because everyone is afraid of [her] father." (AR 103.)

F.2 1451 at 1453 (10th Cir. 1989) (discussing the substantial evidence standard) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

For these reasons, and noting the "unusually deferential" standard of review it owes to the AFBCMR, the Court finds the AFBCMR's decision was not arbitrary, capricious, or unsupported by substantial evidence.[13] *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) ("[W]e will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.").

## CONCLUSION

For the forgoing reasons, it is

**ORDERED** that the Air Force Board for Correction of Military Records final decision is **AFFIRMED**.

Dated this 7th day of March, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[13] The Court also notes that while Plaintiff focuses on the allegedly disrespectful statements to Major Haig, there were several other bases for her disenrollment addressed by the AFBCMR. (AR 222 ("In accordance with USAFAI 36-3504, the Superintendent may disenroll cadets for conduct, to include minor disciplinary infractions. The Superintendent may also disenroll cadets who fail in conduct and/or aptitude probation. Here, the applicant clearly demonstrated deficiencies in both regards. Not only did she cheat, she failed to abide by the terms of her probation – not once, but twice.").) While the statements to Major Haig triggered the second disenrollment proceedings, several high-ranking officers agreed that Plaintiff's admitted conduct alone was sufficient to support her disenrollment. *See supra* at 2–3.